J-S03005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: H.D.P-W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: E.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1113 WDA 2024 |

Appeal from the Order Dated July 22, 2024
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000025-2024

BEFORE:  KUNSELMAN, J., SULLIVAN, J., and BECK, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED: March 11, 2025**

E.H. (Mother) appeals from the order granting the petition filed by the Allegheny County Office of Children, Youth and Families (the Agency) which terminated her rights to her now two-and-a-half-year-old son, H.D.P-W (the Child), pursuant to the Adoption Act.  **See** 23 Pa.C.S.A. § 2511(a)(2), (a)(5), (a)(8), (b).  After review, we affirm.[1]

We discern the following factual background from the orphans' court's Appellate Rule 1925(a) opinion and the termination hearing transcript.[2]  The

---

[1] The court also involuntarily terminated the rights of H.P. (Father), who did not appeal.

[2] We note that the certified record on appeal does not include the exhibits that were admitted into evidence at the termination hearing.  However, the record includes the hearing transcript and a transcript from the permanency review hearing on April 3, 2024.  Mother relies on the testimony from the termination hearing to support her arguments.  Thus, our appellate review was not

*(Footnote Continued Next Page)*

Child was born in September 2022. The Agency was previously involved with Mother because of her cocaine addiction, intellectual disabilities, homelessness, and a prior dependency case.[3] After the Child's birth, Mother self-reported daily marijuana use, monthly cocaine use, and wine consumption during her pregnancy. The Agency took emergency custody of the Child on September 7, 2022. He was discharged from the hospital the next day and placed in a foster home. The Child was adjudicated dependent on September 21, 2022.

Mother's overall goals were to maintain stability, achieve sobriety, and obtain housing. Mother was to attend mental health treatment, address intimate partner violence (IPV) through counseling,[4] address parenting concerns, and attend drug and alcohol screenings.

Mother made progress on her goals, but her progress was slow. Mother was successfully discharged from inpatient substance abuse treatment on February 27, 2023. Once discharged, she entered the Abstinent Living program at Turning Point and was later released on September 14, 2023 to a

_____

impeded. Nonetheless, we remind Mother and her counsel that it is ultimately the appellant's responsibility to ensure that the record is complete on appeal to enable our appellate review. *See* Pa.R.A.P. 1921, Note.

[3] The prior dependency case involved the Child's older half-sibling, who is not the subject of this appeal. Mother's parental rights to the half-sibling were terminated, and he was adopted. The Child now resides in the half-sibling's adoptive home, which is a pre-adoptive placement for the Child.

[4] IPV had been reported with both Mother and Father being the aggressors. Mother reported that Father had strangled her during their relationship.

three-quarter house run by Turning Point. At some point prior to the permanency review hearing on December 13, 2023, Mother had the opportunity to be released from the three-quarter house and move into her own independent housing, but Mother declined to leave.

On July 8, 2024, ten days before the termination hearing, Mother was asked to leave the three-quarter house. Mother reported that this happened because a peer stated that she had relapsed. Mother then stayed with friends for approximately two days before going to a women's shelter. On July 15, 2024, an Agency caseworker took Mother to another three-quarter house, where she remained at the time of the termination hearing on July 18, 2024. Mother had yet to maintain sobriety outside of a structured setting. This was a concern for the Agency and Dr. Gregory Lobb, a licensed psychologist who testified at the termination hearing.

Mother received mental health treatment. Dr. Lobb conducted an individual evaluation of Mother on February 5, 2024. At that time, Mother reported seeing a therapist once a month. Dr. Lobb recommended that she see a therapist no less than twice a month and continue to take her prescribed medication. At the termination hearing, Mother testified that she was receiving therapy approximately twice a month and taking her medication.

Mother completed an IPV counseling program through Turning Point. However, the Agency still had concerns with IPV because Mother frequently contacted Father while visiting with the Child, typically during the unsupervised portion of her visits. However, there were no reports of

continuing IPV between Mother and Father. Mother testified at the termination hearing that it had been over a year since IPV had occurred between her and Father.

Mother was referred to Achieva Community Services (Achieva), to assess her parenting and to provide coached visitation. Achieva started working with Mother in May 2023, and supervised some of Mother's visits with the Child. As of the termination hearing, Mother was having visits twice a week, for three hours one day and two hours the other day. One visit was at Mother's Turning Point residence and the other was at the Achieva office. Both of Mother's weekly visits were supervised, with periods of unsupervised time. Her unsupervised time began as two periods of fifteen minutes each, then moved to one thirty-minute period in March 2024, and then to one hour in June 2024. However, Achieva was still present for mealtimes and diaper changes and always remained within earshot during Mother's unsupervised time.

Mother made progress with appropriately feeding the Child, improving her interactions with him, and meeting his needs. However, Achieva still needed to redirect Mother regarding attentiveness approximately once per visit. Additionally, Achieva sometimes needed to redirect Mother regarding appropriate portion sizes for the Child's meals. There were no safety issues during the visits Achieva supervised.

Adoption Connection PA also supervised some of Mother's visits with the Child, until May or June 2024 when Achieva began supervising both visits.

Mother made progress with following Adoption Connection's redirection and responding to the Child's needs. Nevertheless, there were some concerns with Mother's behavior during visits. At times, Mother would get upset and swear in front of the Child. She sometimes failed to appropriately supervise the Child. Adoption Connection had to redirect Mother about being on her phone and, thus, not being attentive to the Child during visits. Mother had a confrontation with her roommate during a visit. She had difficulties with overfeeding the Child. She made progress with changing the Child's diaper, but occasionally still needed reminders to do so from Adoption Connection.

The Agency filed a petition to terminate Mother's parental rights on March 18, 2024. The orphans' court held a contested termination hearing on July 18, 2024. Six witnesses testified at the hearing: an Achieva parenting support professional, an Adoption Connection PA case aide supervisor, Dr. Lobb, two Agency caseworkers, and Mother. On July 22, 2024, the orphans' court terminated Mother's rights under the Adoption Act. 23 Pa.C.S.A. § 2511(a)(2), (a)(5), (a)(8), (b). Mother timely filed this appeal. She presents the following four issues for our review:[5]

_____

[5] The orphans' court urges us to find that Mother waived her issues on appeal because her issues are raised "without any specificity as to where specifically in the record there was an error and/or abuse of discretion." Orphans' Court Opinion (O.C.O.), 9/9/24, at 17. As listed in her Appellate Rule 1925(b) statement, Mother's issues challenge the orphans' court's findings under each relevant subsection of the Adoption Act, claiming that there was not clear and convincing evidence to prove each subsection. Mother also claims that the court failed to consider certain evidence. Through her 1925(b) statement and

*(Footnote Continued Next Page)*

1. Did the trial court abuse its discretion and/or err as a matter of law by involuntarily terminating Mother's parental rights pursuant to 23 Pa.C.S. §2511(a)(2)?

2. Did the trial court abuse its discretion and/or err as a matter of law by involuntarily terminating Mother's parental rights pursuant to 23 Pa.C.S. §2511(a)(5)?

3. Did the trial court abuse its discretion and/or err as a matter of law by involuntarily terminating Mother's parental rights pursuant to 23 Pa.C.S. §2511(a)(8)?

4. Did the trial court abuse its discretion and/or err as a matter of law in concluding that [the Agency] met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of the [C]hild pursuant to 23 Pa.C.S. §2511(b)?

Mother's Brief at 6.

We begin with our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

---

the arguments in her brief, we were able to discern what issues Mother was raising on appeal. Thus, we decline to find waiver in this instance.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Our Supreme Court has repeatedly stated that in termination cases, deference to the trial court is particularly crucial. ***In re Adoption of L.A.K.***, 265 A.3d 580, 597 (Pa. 2021); ***see also Interest of S.K.L.R.***, 256 A.3d 1108, 1124 (Pa. 2021) ("When a trial court makes a 'close call' in a fact-intensive case involving . . . the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether evidence supports the trial court's conclusions; the appellate court should not search the record for contrary conclusions or substitute its judgment for that of the trial court."). The abuse-of-discretion standard in termination cases "is a highly deferential standard and, to the extent that the record supports the court's decision, we must affirm even though evidence exists that would also support a contrary determination." ***In re P.Z.***, 113 A.3d 840, 849 (Pa. Super. 2015) (citation omitted); ***see also T.S.M.***, 71 A.3d at 267.

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re C.S.***, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting ***Matter of Adoption of Charles E.D.M., II***, 708 A.2d 88, 91 (Pa. 1998)).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child . . . .

*In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted);

*see also Interest of M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022).

Instantly, the orphans' court terminated Mother's rights under Section 2511(a)(2), (a)(5), (a)(8), and (b).  As we may affirm under any ground under Section 2511(a), we review the court's decision as to Section 2511(a)(2). That subsection provides:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

[…]

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To satisfy Section 2511(a)(2), the petitioning party must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the

incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021) (citation omitted). Moreover, grounds for termination under Section 2511(a)(2) "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id.* (citing *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010)). On this point, we emphasize that "[p]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *Id*. (citation omitted).

Here, the orphans' court determined that the Agency met its burden. The court noted:

> The Child was removed immediately after birth [in September 2022], and while Mother made progress addressing goals related to her sobriety, mental health, and IPV, Mother continued to have parenting deficits. Her progress was slow. She still required supervision by Achieva during feeding and diapering, and she had not reached the point where she had unsupervised visits. Mother's visitation, up until the time of the termination proceedings, had been either in a supervised substance abuse treatment facility where she was residing or in the Achieva office. Within [ten days] of the termination hearing, Mother was asked to leave the treatment facility she had lived [in] for quite some time due to concerns of a relapse, rendering Mother homeless until she was able to obtain an intake at a new three-quarter house, as facilitated by the [Agency] caseworker.

O.C.O. at 24.

On appeal, Mother argues that the Agency failed to prove that she "has not or cannot remedy the conditions that caused the [Child] to be without essential parental care." Mother's Brief at 18. The Child was removed due to

concerns related to Mother's mental health, sobriety, housing, IPV, and parenting. *Id.* Mother asserts that she has now progressed to a point where none of those concerns exist. *See id.* She achieved sobriety and complied with the recommended level of mental health treatment and court-ordered IPV counseling. *See id.* at 19. To support her contentions, Mother cites testimony from Dr. Lobb, the Agency, and Achieva and discounts the contrary testimony from Adoption Connection PA. *See id.* at 18-20.

Mother's argument fails to appreciate the standard of review we must apply to termination cases. We must accept the orphans' court's factual findings and credibility determinations if they are supported by the record. *See T.S.M.*, 71 A.3d at 267 (citation omitted). This is true even if the record could support an opposite result. *See id.*

Our review of the record supports the orphans' court's decision. As noted, the Child was removed shortly after his birth in September 2022 due to concerns with Mother's sobriety, mental health, housing, IPV, and parenting. Mother made progress in remedying some of these concerns, but her progress was slow, and after nearly two years, she never reached the point where the Child could be returned to her care. In fact, Mother never progressed to fully unsupervised visits. During Mother's visits, Achieva occasionally still needed to redirect Mother regarding her attentiveness and appropriate portion sizes for the Child's meals. *See* N.T., 7/18/24, at 23, 25-28. Achieva also supervised mealtimes and diaper changes, with Mother's

unsupervised time occurring shortly after those. *See id.* at 19. Even during unsupervised time, Achieva remained within earshot in case Mother needed anything. *Id.* at 20. Furthermore, Adoption Connection PA had some concerns about Mother's conduct during visits. *See id.* at 39.

Additionally, Mother's housing remains unstable, as evidenced by her removal from her three-quarter house ten days before the termination hearing. *See id.* at 147. When the Agency received this case in 2022, Mother, who was then thirty-two years old, reported to a caseworker that she had been homeless for approximately ten years. *See id.* at 117. There was also evidence that she had previously lived independently for only six months. *See id.* at 118.

Therefore, there was competent evidence to support the determination that Mother could not or would not remedy the causes of her parenting incapacity. Although we commend Mother for the efforts she has made, particularly in maintaining her sobriety, we note that childhood is fleeting. The Child's permanency cannot be delayed indefinitely while Mother continues to rehabilitate. The record reflects that Mother is not able to make "reasonably prompt assumption of full parental duties." *A.H.*, 247 A.3d at 443 (citation omitted). As an error correcting appellate court, we cannot search the record for contrary conclusions or substitute our judgment for that of the orphans' court. *See S.K.L.R.*, 256 A.3d at 1124. The orphans' court's findings are

supported by the record; thus, we must accept them. ***See T.S.M., supra***.

Mother's first issue merits no relief.[6]

We turn next to Section 2511(b), the second part of the bifurcated

analysis in termination of parental rights cases. Section 2511(b) provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(b).

The "determination of the child's particular developmental, physical, and

emotional needs and welfare must be made on a case-by-case basis," but

"courts should consider the matter from the child's perspective, placing [the

child's] developmental, physical, and emotional needs and welfare above

concerns for the parent." ***In the Interest of K.T.***, 296 A.3d 1085, 1105 (Pa.

2023) (citations omitted); ***see also C.M.K.***, 203 A.3d at 261-62 (the focus of

Section 2511(a) is the conduct of the parent, whereas the focus of Section

2511(b) is the best interests of the child).

"The plain language of Section 2511(b) clearly mandates that, in

assessing the petition to terminate parental rights, the 'primary consideration'

must be the child's 'developmental, physical and emotional needs and

---

[6] We need not address Mother's second and third issues because we may affirm termination of her rights under any ground under Section 2511(a).

welfare.'" ***K.T.***, 296 A.3d at 1105. It is well-established that the child's "emotional needs" and "welfare" include "intangibles such as love, comfort, security, and stability." ***Id.*** at 1106 (citing ***T.S.M.***, 71 A.3d at 267). Our Supreme Court also requires courts to consider, not only whether the children have a bond with their biological parent, but also whether the children are in a pre-adoptive foster home and whether they have a bond with their foster parents. ***Id.*** (citing ***T.S.M.***, 71 A.3d at 268; ***In re D.C.D.***, 105 A.3d 662, 677 (Pa. 2014)).

Here, the orphans' court concluded that terminating Mother's rights met the Child's needs and welfare and was in the Child's best interest. The court noted that, as of the termination hearing, "the Child was twenty-two months old and had spent his entire life outside of his Mother's care." O.C.O. at 27. The court cited evidence regarding the attachments and bonds between the Child and Mother and the Child and his foster parents. ***See id.*** at 29.

On appeal, Mother argues that "[t]he record clearly established that [the Child] and Mother share a secure attachment and a very close and important bond." Mother's Brief at 26. Mother notes that the Child sees her as a safe person and did not want to leave her side during Dr. Lobb's evaluation. ***Id.*** Dr. Lobb recommended that the Child be adopted by his foster parents to achieve permanency. ***See*** N.T., 7/18/24, at 86. However, Mother discounts this recommendation because Dr. Lobb had not seen the Child with Mother in

five or six months by the time the hearing occurred and, therefore, based his recommendation on outdated facts. *See* Mother's Brief at 26-27.

Mother's argument again fails to appreciate the standard of review we must apply in termination cases. We must accept the orphans' court's factual findings and credibility determinations if they are supported by the record, even if the record could support an opposite result. *See T.S.M.*, 71 A.3d at 267 (citations omitted).

Here, the record supports the orphans' court's findings. Mother is correct that approximately six months passed between Dr. Lobb's interactional evaluation with Mother and the Child in January 2024 and the termination hearing in July 2024. *See* N.T., 7/18/24, at 83. However, Dr. Lobb was aware of how much time had passed and still recommended, to a reasonable degree of psychological certainty, that the Child needed permanency and that being adopted by the foster family was in the Child's best interest. *See id.* at 86, 89. Dr. Lobb did not believe that Mother had the ability, at the time of the termination hearing, to provide the Child with the safety, security, and stability he needed. *See id.* at 88.

Furthermore, on cross-examination, Mother's attorney questioned Dr. Lobb on the validity of his recommendations given the time that had passed since his evaluations. *See id.* at 91. Thus, the orphans' court was aware that approximately six months had passed, and it was the orphans' court's job to make factual findings and credibility determinations from the evidence

presented. ***See T.S.M., supra***. Mother's emphasis on the amount of time that passed between Dr. Lobb's evaluation and the termination hearing does not persuade us that the orphans' court erred as a matter of law or abused its discretion in terminating her parental rights.

Dr. Lobb also testified that there was a secure attachment and a bond between Mother and the Child, which the orphans' court acknowledged in its opinion. ***See*** O.C.O. at 29. However, Dr. Lobb did not think that terminating parental rights would be detrimental to the Child, and that any detriment would be overcome by the Child's relationship with his foster parents. ***See*** N.T., 7/18/24, at 88, 100. Again, it was the orphans' court's job to make factual findings and credibility determinations from the evidence presented. ***See T.S.M., supra***.

Additionally, other testimony at the hearing reflected that the Child has bonded with the foster parents and the other children in the foster home. ***See*** N.T., 7/18/24, at 127. There was testimony that the foster parents meet all the Child's needs. ***See id.*** at 128, 151. Thus, the record supports the orphans' court's findings, and Mother's fourth issue merits no relief.

In sum, we discern no error of law or abuse of discretion in the orphans' court's decision to terminate Mother's parental rights under Section 2511(a)(2) and (b) of the Adoption Act.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/11/2025